## Morrell Trust

*Roger E. Johnsen,* for accountants.

*James E. Gallagher, Jr.,* amicus curiae, p.p.

KLEIN, A. J., May 24, 1973.—By deed of trust dated December 3, 1926, Louise Drexel Morrell placed certain

securities in trust, to pay the net income for the upkeep, maintenance and current running expenses of St. Edward's Convent and Parochial School at Bar Harbor, Maine, in perpetuity, and if at any time maintenance and the continued running of said convent and school shall be abandoned or discontinued for a period of one year or more, then to turn over the trust estate to the trustees of the Permanent Endowment Fund of the St. Emma Industrial and Agricultural Institute (later known as St. Emma Military Academy), a Virginia corporation. A. Leona Colby, Louise Drexel Morrell and John J. Sullivan were named trustees.

The present accountants, who were appointed substituted trustees by decree of this court dated January 15, 1960, have filed this account because they believe there has been a failure of purpose which requires that the trust be terminated.

Testimony was taken at a hearing held on November 17, 1972, from which it appears that in September, 1967, the operation of St. Edward's Parochial School as an elementary school was discontinued and the school was subsequently used for the purpose of imparting religious instruction to the children of Holy Redeemer Parish, Bar Harbor, Maine. In June, 1970, the convent was closed and was not reopened until September of 1971. Payments from the income of the trust were discontinued in August, 1970.

It also appears that subsequent to the filing of the account St. Emma Military Academy closed, effective in June, 1972, and is now in process of liquidation. The court is therefore faced with the responsibility of determining what disposition is to be made of the corpus and accumulated income.

When this trust was created there were two functioning schools, one in Maine and one in Virginia. The

settlor provided that if the school in Maine closed for a period of one year or more, which event did occur, the funds were to be used for the school in Virginia. Now the school in Virginia is closed permanently and the school in Maine has reopened with a program substantially different from the one in effect when settlor was alive.

There can be no doubt that the settlor intended to benefit one or the other of these two schools. The one in Maine has some viability, the one in Virginia is closed. Before St. Emma's closed its doors, the trustees of the Morrell trust asked that they be permitted to resign, that they be relieved of all further responsibility for the trust, and that they be authorized to pay over the principal and accumulated income to the trustees of the Permanent Endowment Fund of St. Emma Military Academy.

If St. Emma's was operating as a school, there is no question that the settlor would have intended the fund to go there. It seems unlikely, however, that she would have wanted to take the money from a partially operating school and give it to the trustees of a school that is closed. As the matter stands today, any funds in the Permanent Endowment Fund of St. Emma Military Academy will, we are informed, be transferred to the Sisters of the Blessed Sacrament for Indians and Colored People when the school is finally liquidated and the trustees of the fund discharged. It will be noted that in these proceedings Mr. Johnsen represents, in addition to the accountants, the trustees of the Permanent Endowment Fund of St. Emma Military Academy, and the Sisters of the Blessed Sacrament for Indians and Colored People.

A question was raised at the audit as to what is meant by a "parochial school" as that term is used in

the deed of trust. Specifically, does a school which offers only religious instruction constitute a parochial school?

Counsel for the accountant has suggested that the term "parochial school" connotes a private school at which students, in addition to religious instruction, are given courses of study sufficient to qualify attendance thereat as compliance with compulsory education requirements. We cannot accept this narrow and restricted definition. Black's Law Dictionary, 4th Ed., p. 1272, defines parochial as relating or belonging to a parish. Webster's New Twentieth Century Dictionary of the English Language (Unabridged 1955) defines parochial school as a "school supported and controlled by the church." The use of the term "parochial" does not imply a particular type of curriculum, but merely indicates that the school is sponsored and controlled by a church organization. A school supported and controlled by a church is a parochial school even if its curriculum is restricted to religious subjects exclusively. It is not the subjects which are taught but the control of the school which is determinative of its status as a parochial school.

In our opinion, the present operation of St. Edward's Convent and Parochial School, where students receive only religious instruction to supplement their public school education, qualifies it as a parochial school.

We need not pursue this question further as all of the parties in interest, including the Roman Catholic Bishop of Portland, who has jurisdiction of St. Edward's Convent and Parochial School, have entered into an agreement dated March 13, 1973, to continue the trust for a period of 10 years, subject to certain specified terms and conditions.

The agreement is annexed hereto, signed by Henry A. Gallagher, John G. Rich and Catherine G. Keating

(known in religion as Mother M. Jerome), substituted trustees, Peter L. Gerety, the Roman Catholic Bishop of Portland, and Mary Elizabeth Fitzpatrick (known in religion as Mother Mary Elizabeth), President, and Kathleen V. McGowan (known in religion as Sister Maria Concetta), Vice President, of the Sisters of the Blessed Sacrament for Indians and Colored People. The relevant provisions of the agreement are:

"1. That the Trustees shall transfer and set over unto the Sisters of the Blessed Sacrament for Indians and Colored People, a Pennsylvania corporation, the principal and accumulated income held by them as Trustees under Deed of Trust of Louise Drexel Morrell, Settlor, dated December 3, 1926, whereupon the Trustees shall be relieved of all responsibility for said Trust Fund.

"2. That the Sisters of the Blessed Sacrament for Indians and Colored People shall maintain said fund as a separate trust fund for a period of ten years from the date hereof, during which time the income of said trust shall be paid to the Roman Catholic Bishop of Portland to be used by him for defraying the expenses of St. Edward's Convent and School at Bar Harbor, Maine.

"3. At the end of the ten (10) year period, the Sisters of the Blessed Sacrament shall file with the Orphans' Court Division of the Common Pleas Court of Philadelphia, a report of the fund and the Roman Catholic Bishop of Portland, or his successor in office, shall file a report as to the operation of the School and Convent, and at that time the Orphans' Court Division shall make such further disposition as it may deem appropriate based upon the record in this case.

"4. That upon receipt of the accumulated income from the Trustees, the Sisters of the Blessed Sacrament shall pay to Roger A. Johnsen, Esquire, attorney for the

Trustees, a counsel fee in the sum of $2000.00, and the balance of the income received by them shall be paid over and delivered to the Roman Catholic Bishop of Portland to be used by him for the operation of St. Edward's Convent and School at Bar Harbor, Maine.

"5. That the balance of income in said fund as of November 1, 1972, was $3792.57.

"6. That the only payment made by Trustees since November 1, 1972, was payment to Frederick T. Lachat, Official Court Reporter, for the Notes of Testimony taken by him at the hearing held November 17, 1972 before the Honorable Charles Klein, Administrative Judge.

"7. That the Sisters of the Blessed Sacrament shall receive a commission of 6% of the annual income to help defray their costs in handling the said trust fund during the ten (10) year period and remitting the net income to the Roman Catholic Bishop of Portland.

"8. The Roman Catholic Bishop of Portland shall be responsible for furnishing annual reports to the Sisters of the Blessed Sacrament of operations of St. Edward's Convent and School during the said ten (10) year period.

"9. It is mutually agreed that if, at any time during the ten (10) year period, the said St. Edward's Convent and/or School at Bar Harbor, Maine, shall cease operations for a period of one (1) year, the responsibility of the Sisters of the Blessed Sacrament to pay over the net income to the Roman Catholic Bishop of Portland shall cease, and this agreement shall be terminated.

"Upon such termination, the principal and income of this Trust shall become the property of The Sisters of the Blessed Sacrament for Indians and Colored People, a Pennsylvania corporation, and shall be used by them for their corporate purpose."

The auditing judge, who was a participant in devel-

oping the agreement, fully concurs with the terms thereof, and adopts them as part of this adjudication. All parties are agreed that this arrangement is to be preferred to an outright termination of the trust. . . .

And now, May 24, 1973, the account is confirmed nisi.